In re PATTEE.

(District Court, D. Connecticut. March 5, 1906.)

No. 1,511.

1. BANKRUPTCY—EXPENSES IN MANAGEMENT OF PROPERTY—ASSIGNEE ACTING AS TRUSTEE.

Where a general assignee for creditors, after an adjudication of bankruptcy against his assignor, with the approval of the referee, continued in the management of the bankrupt's business until the appointment of a trustee, and conducted the same successfully, he is entitled to payment for his services rendered during such time, and the trustee should also be required to pay bills properly and legitimately contracted by him in the conduct of the business after the adjudication, but not those previously made.

2. SAME.

Where a general assignee, continued in the management of the business after his assignor had been adjudged a bankrupt until the appointment of a trustee, incurred bills for lights, which, if he had paid at the time, as he might have done, with funds in his hands, would have been subject to a large discount, he is entitled to be allowed from the estate only the amount which would have been required if he had so paid them.

In Bankruptcy. On review of decision of referee ordering trustee not to pay certain claims charged against him as trustee.

Burpee & Carmody, for creditors.

Wilson H. Pierce, for trustee.

PLATT, District Judge. On August 26, 1904, the bankrupt made a common-law assignment to John W. Smart, of Boston, for the benefit of his creditors, of his property rights in two hotels, viz., the Hotel Russwin, in New Britain, and the Hotel Connecticut, in Waterbury. Mr. Smart disposed of the Hotel Russwin property for about $4,000, paid all the expenses connected with managing the hotel and disposing of the property, and delivered to the trustee in bankruptcy $2,766.67, which was the net amount received after such payments, retaining nothing, so far as appears, to compensate himself for services. Mr. Pattee was adjudicated bankrupt on October 29, 1904, and the trustee was appointed November 15, 1904. At the time of adjudication Mr. Smart was found in possession of what remained of the bankrupt's property, holding under the common-law assignment. With the consent and approbation of the referee, he continued in possession until the trustee was appointed. The claims which the referee has ordered not to be paid arise out of the treatment of the property by Smart during the interim between October 28, 1904, when he began to act as a quasi trustee for the creditors, and November 15, 1904, when the appointment of the lawfully chosen trustee terminated such condition.

The referee admits that Smart ran the Hotel Connecticut at a profit during that time, and that he earned what he demands, and that he would order it paid, if it were not for the way Smart has acted in the matter. The referee says that Smart did not do the best that he could for the estate, because he did not turn over to the trustee a lease of the hotel, which he had taken in his own name, and which contained a provision that it could not be assigned without the consent of the lessor. No other reason is given for refusing payment of Smart's claim for services. It appears, however, that the lessor Haase would not consent to the acceptance of the trustee as the assignee under the lease. The court ought not to permit itself to surmise that the position taken by Haase was due to a scheme concocted by himself and Smart. The fact that Haase did not and would not consent to the turning over of the lease to the trustee made such a turning over impossible. The referee, therefore, proposes to punish Smart because he did not perform an impossibility.

Smart's claim for services rendered the trustee, and ordered not paid by the referee, was $500; but in the argument of the review he only insists upon $319.65. The latter amount appears to have been fairly earned, and must be paid by the trustee. The only other item in Mr. Smart's bill which requires attention is "money advanced to pay for electric light," $231. As a matter of fact, the electric light bills were not paid by Smart, and the sum of $231 is, as appears by the bills in evidence, due from John W. Smart, assignee to the Connecticut Railway & Lighting Company. It also appears that the account begins either on September 17 or on October 17, 1904. In either event, it was incurred by Mr. Smart while acting as common-law assignee, and before his acceptance by the referee as a quasi trustee. That disposes of the first bill. The second bill is for $120, and is within the time when Smart acted as quasi trustee, but there are two grave objections to the allowance of that part of the electric light account. Smart claims it from the trustee as "money advanced to pay," etc., but it is admitted that no part of the entire bill for $231 has been paid by anybody. That is one trouble, and the other is this: If Smart had paid the bill for $120 which is the only part of the account which he can logically expect the trustee to repay, he would have received from the company a rebate of $48, leaving his actual disbursement only $72. I think that the trustee ought to pay over to the Connecticut Railway & Lighting Company from the funds of the estate the sum of $72, to be applied by that company upon the bill for $120, which Smart, assignee, owes.

The next matter sought to be reviewed is the order directing the trustee not to pay the Burbank-Hanley Company $335.99. It is agreed on all sides that the supplies which that account represents were furnished the Hotel Connecticut during the time when Smart acted as quasi trustee, and that it has not been paid. The referee gives two reasons for ordering the trustee not to pay it: First. That Smart was a stockholder in the company, acted as agent for it, and is attorney for it in this bankrupt matter. This line of reasoning is not persuasive. Second. That he received, while acting as quasi trustee, more than enough money to pay it, and therefore he ought to pay it

himself. It seems that Smart turned over to the trustee all books and accounts kept by him while acting as quasi trustee, and a certain sum in cash which appeared to be the profit made by him while running the hotel. The referee reports that the books balanced, and compliments Smart upon his good management in all respects, save that of not performing the impossible feat of delivering a nonassignable lease. Smart undertook to give up all that he had except the lease. If the trustee has reasonable grounds for believing that Smart retained any moneys which he ought to have turned over, he should ask permission of the court to take action in the matter. The goods in question were furnished by the Burbank-Hanley Company, to the Hotel Connecticut during the time when Smart was in charge, with the knowledge and consent of the referee, and have not been paid for. The trustee must pay this bill.

The claim of W. S. Quinby Company was ordered not paid. The larger part of it was contracted by Smart while acting as common-law assignee. With regard to that part of it, I agree with the referee that Smart must pay it, and present the claim against the estate. The rest of the bill comes within the quasi-trusteeship period, and the referee disposes of that part for the latter line of reasoning urged against the Burbank-Hanley Company claim. The view which I have expressed in that matter applies to this. The trustee must pay this balance, which, as I figure it from the original bill, is $26.50. The other grounds for review are not pressed by the creditors.

To recapitulate: Let the trustee pay from the funds in his possession $319.65 to John W. Smart. Let the trustee also pay to the Connecticut Railway & Lighting Company $72, to be applied by that company upon the second bill of the two which makes up the amount which Smart, assignee, owes the company. Let the trustee also pay the Burbank-Hanley Company $335.99, and let him pay the W. S. Quinby Company the sum of $26.50; the last two claims having been incurred while Smart was acting as quasi trustee, with the knowledge and approval of the referee.